IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00085-M

LEVEL AT 401 LP, )
 )
                    Plaintiff, )
 )
v. ) **OPINION**
 ) **AND ORDER**
FIRST CO., EMERSON CLIMATE )
TECHNOLOGIES, INC., and COPELAND )
CORPORATION, LLC, )
 )
                    Defendants. )

This matter comes before the court on the May 19, 2020 motions to dismiss the amended complaint filed by (1) Defendant First Co. ("First Company") [DE-29] and (2) Defendants Emerson Climate Technologies, Inc. ("Emerson") and Copeland Corporation, LLC ("Copeland," and collectively with Emerson, "Emerson/Copeland") [DE-31]. For the reasons that follow, Defendants' motions are GRANTED.

**I.  Background**

In its amended complaint, Plaintiff Level at 401 LP alleges the following facts: Emerson/Copeland[1] manufactured and sold compressors for heating, ventilating, and air-conditioning units ("HVAC units").

---

[1] Plaintiff's amended complaint jointly accuses Emerson and Copeland of wrongdoing [*e.g.*, DE-23 ¶ 12] and nowhere makes any discrete allegations concerning Emerson and Copeland beyond their respective states of organization and principal places of business and the fact that Copeland is a wholly-owned subsidiary of Emerson [DE-23 ¶ 4; DE-1 ¶ 2]. It is basic tenet of corporate law that a corporate parent and its subsidiary are distinct legal entities with separate responsibilities, and a parent and subsidiary are generally not liable for each other's actions. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980–81 (4th Cir. 1987) (discussing the doctrine of limited liability and the "colorful metaphor of the corporate veil" in the parent-subsidiary context). But because: (1) Emerson and Copeland are jointly represented by the

1

[DE-23 ¶¶ 8, 14] Sometime in 2014, First Company, an HVAC-unit manufacturer: (1) installed Emerson/Copeland compressors into certain of its HVAC units; and (2) sold approximately 300 HVAC units containing the Emerson/Copeland compressors to the owner of a newly-constructed apartment complex in Raleigh, North Carolina. [DE-23 ¶¶ 8, 14] As part of the sale, First Company provided a limited warranty that set forth as follows:

> First Co. products are warranted to be free from defects in material and workmanship under normal use and maintenance for a period of one year from the date of original installation or 18 months from the date of manufacture. Compressors are warranted for 5 years. A new or rebuilt part to replace any defective part that fails within the warranty period will be provided if the defective part is returned to the factory. [DE-23-1]

"Shortly after [First Company] manufactur[ed] the HVAC units" [DE-34 at 1], Emerson/Copeland informed First Company via an August 2014 bulletin of an issue that some were having with the Emerson/Copeland compressors, namely that the compressors were causing thermostatic-expansion valves to fail in some HVAC units in which the compressors were installed. [DE-23 ¶ 11–12; DE-7-1] Neither Emerson/Copeland nor First Company took any steps to inform the public of the issue with the Emerson/Copeland compressors or the First Company HVAC units in which the compressors were installed. [DE-23 at ¶¶ 12–14]

In February 2017, Plaintiff purchased the Raleigh apartment complex from an unspecified seller. [DE-23 ¶ 10] As part of the transaction, Plaintiff hired a consultant to inspect the First Company HVAC units, and the consultant indicated that he had observed no mechanical issues with them. [DE-23 ¶ 10]

Sometime in the fall of 2019, more than 70 of the HVAC units began to fail. [DE-23 ¶ 16] Plaintiff hired a mechanical engineer to determine the cause of these failures, and the engineer concluded that the

---

same counsel, and have responded to Plaintiff's allegations entirely in tandem [DE-31]; (2) Emerson and Copeland do not raise the dearth of discrete factual allegations as an issue in their joint briefing; and (3) doing so does not change the fact that dismissal of Plaintiff's claims is the appropriate outcome, the court will conduct its analysis as if Emerson and Copeland comprise a single legal entity.

cause was the "defective Emerson/Copeland compressor unit[.]" [DE-23 ¶ 17] On December 10, 2019, Plaintiff notified Defendants via certified mail of "these damages" and its "intention to repair and/or replace the defective HVAC units[,]" and requested that Defendants contact Plaintiff's representatives. [DE-23 ¶ 20] None of Defendants responded to Plaintiff's request. [DE-23 ¶ 20]

On February 4, 2020, Plaintiff filed a complaint in Wake County, North Carolina Superior Court alleging that Defendants had unlawfully concealed the compressors' defective condition from Plaintiff, and brought causes of action in breach of warranty, negligence, fraud/fraudulent concealment, and violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (the "UDTPA"). [DE-1-4] Defendants removed the case to this court on March 6, 2020. [DE-1]

Plaintiff filed its amended complaint in this court with Defendants' consent on April 24, 2020. [DE-23] In the amended complaint, Plaintiff brings the following causes of action: (1) breach of express warranty, against First Company; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d) (the "MMWA"), against First Company; (3) negligence, against First Company; (4) negligence, against Emerson/Copeland; (5) fraud/fraudulent concealment, against all Defendants; and (5) violation of the UDTPA, against all Defendants. [DE-23] Plaintiff seeks to recover damages for having to "repair[] and replace[] the defective HVAC units[,]" including HVAC units that are not alleged to have yet failed.[2] [DE-23 ¶¶ 19, 27, 37]

---

[2] After considering the parties' submissions tendered in response to the court's June 26, 2020 order to show cause [DE-41; DE-42; DE-44], the court: (1) amends the amended complaint by interlineation to allege that the court has federal-question jurisdiction over Plaintiff's MMWA claim pursuant to 15 U.S.C. § 2310(d), and supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367; and (2) exercises jurisdiction over Plaintiff's claims accordingly.

On May 19, 2020, Defendants moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) ("Rule 9(b)" and "Rule 12(b)(6)"). [DE-29 (First Company); DE-31 (Emerson/Copeland)] Defendants' motions have been fully briefed and are ripe for adjudication.

## II. Legal standards

Under Rule 12(b)(6), a defendant may move the court to dismiss a pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, any legal conclusions proffered by the plaintiff need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a Rule 12(b)(6) motion, the plaintiff's factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility requires that the factual allegations 'be enough to raise a right to relief above the speculative level[.]'" *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Although it is true that the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall*, 846 F.3d at 765 (internal quotation marks and citation omitted).

Under the heightened pleading standard of Rule 9(b), a party bringing a cause of action alleging fraud must also "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The set of facts that must be pled with particularity varies based upon the nature of the fraud being alleged. *See infra* Section III(a)(iv) (discussing Rule 9(b)'s pleading requirements for fraudulent-omission claims). While a plaintiff is required to plead the allegedly-fraudulent conduct with particularity, "a court should

4

hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### III. Analysis

As mentioned above, Plaintiff's amended complaint contains the following causes of action: (1) breach of express warranty, against First Company; (2) violation of the MMWA, against First Company; (3) negligence, against First Company; (4) negligence, against Emerson/Copeland; (5) fraud/fraudulent concealment, against all Defendants; and (5) violation of the UDTPA, against all Defendants. [DE-23] Defendants argue that each of Plaintiff's causes of action fails under Rules 9(b) and/or 12(b)(6). The court will address the various causes of action brought against First Company and Emerson/Copeland in turn.

#### a. First Company

##### i. *Breach of express warranty*

"A warranty, express or implied, is contractual in nature." *Wyatt v. N.C. Equip. Co.*, 253 N.C. 355, 358, 117 S.E.2d 21, 24 (1960). As with any other breach-of-contract action, a cause of action for breach of an express warranty requires plausible allegations that (1) defendant made an express warranty that is enforceable by the plaintiff and (2) defendant breached the terms of the express warranty. *See Cummings v. Carroll*, No. COA19-283, 841 S.E.2d 555, 572 (N.C. Ct. App. Mar. 3, 2020) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." (quotation marks and citation omitted)). "As a contract being interpreted, the terms of an express warranty are . . . construed in accordance with their plain meaning[.]" *Hills Mach. Co., LLC v. Pea Creek Mine, LLC*, No. COA18-890, 828 S.E.2d 709, 715 (N.C. Ct. App. May 21, 2019) (internal quotation marks and citation omitted).

As mentioned above, First Company is alleged to have provided a limited warranty in connection with the sale of the HVAC units (the "Warranty"), set forth in part as follows:

> First Co. products are warranted to be free from defects in material and workmanship under normal use and maintenance for a period of one year from the date of original installation or 18 months from the date of manufacture. Compressors are warranted for 5 years. A new or rebuilt part to replace any defective part that fails within the warranty period will be provided if the defective part is returned to the factory. [DE-23-1]

In its motion to dismiss, First Company argues that Plaintiff has failed to adequately allege that First Company breached the Warranty because the amended complaint contains no allegation that any part was "returned to [First Company's] factory." [DE-30 at 17] The amended complaint does not contain an allegation that any part was returned to any factory, and Plaintiff appears to concede that fact within its response brief. [DE-34 at 7] Plaintiff argues, however, that the most reasonable interpretation of the Warranty is that First Company "must return the defective part after a replacement has been installed" [DE-34 at 7], essentially arguing that the return of the defective part is not a condition precedent that must be satisfied before First Company's obligation to provide a replacement part vests.

Plaintiff's proffered interpretation is not a reasonable interpretation of the Warranty. The Warranty plainly sets forth that First Company "will . . . provide[]" "[a] new or rebuilt part to replace a[] defective part that fails within the warranty period[,]" but will do so only "*if* the defective part is returned to the factory." [DE-23-1 (emphasis added)] By using the conditional term "if[,]" First Company agreed to become obligated to act under the Warranty only when a defective part "is returned to the factory." *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011) (Sotomayor, J., dissenting) (discussing the "conditional term 'if'" as "set[ting] forth a condition to invoke" a statute).

In the absence of a plausible allegation that there was a vested obligation to act, there can be no plausible allegation of breach by omission. Because the amended complaint does not contain an allegation

6

that any part was returned to any factory, Plaintiff has failed to plausibly allege that First Company ever became obligated to act pursuant to the Warranty, and therefore has failed to plausibly allege that First Company breached the Warranty by failing to act. The amended complaint accordingly fails to state a claim for breach of the Warranty. *See Hills Mach.*, 828 S.E.2d at 716 (affirming summary judgment on breach-of-warranty claim because there was no evidence forecast of the satisfaction of a condition precedent to the vesting of obligations under the warranty there at issue).

### ii. *Magnuson-Moss Warranty Act*

Plaintiff's cause of action against First Company invoking the MMWA fails for the same reason. Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in certain circumstances. 15 U.S.C. § 2310(d)(1). In the amended complaint, Plaintiff alleges that it can avail itself of the MMWA because First Company's alleged "breach(es) of its express warranty constitutes a violation of the" MMWA. [DE-23 ¶ 30]

Because the court concludes that Plaintiff has failed to plausibly allege that First Company breached the Warranty, *see supra* Section III(a)(i), it follows that Plaintiff has failed to adequately allege that it is "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty," 15 U.S.C. § 2310(d)(1), and Plaintiff's MMWA cause of action must be dismissed as well. *Hassan v. Lenovo (United States), Inc.*, No. 5:18-CV-105-BO, 2019 U.S. Dist. LEXIS 2428, at *15 (E.D.N.C. Jan. 6, 2019) ("[B]ecause plaintiff's breach of express and implied warranty claims all fail as a matter of state law, there is no underlying breach of warranty on which plaintiff can base his federal Magnuson-Moss claim."); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his

7

court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.").

### iii. Negligence by First Company

Plaintiff raises three theories of how First Company was negligent. Plaintiff alleges that First Company was negligent by: (1) manufacturing and supplying HVAC units with defective compressors; (2) failing to inform the public and Plaintiff of the defects in the HVAC units; and (3) failing to repair the HVAC units once the defect in the compressors installed therein became apparent to First Company. [DE-23 ¶ 35]

As a threshold matter, Plaintiff's negligent-failure-to-inform theory fails because a cause of action for negligent omission is not recognized under North Carolina law. *Herrera v. Charlotte Sch. of Law, LLC*, 17 CVS 1965, 2018 NCBC LEXIS 35, *48 (N.C. Super. Ct. Apr. 20, 2018) ("North Carolina does not recognize a claim for negligent omission").

Plaintiff's negligent-manufacturing/supplying and negligent-failure-to-repair theories are defeated by the so-called economic-loss rule. As this court has explained:

> North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected. Instead, such claims are governed by contract law. The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. The North Carolina courts have construed the term "economic losses" to include damages to the product itself. On the other hand, where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract.

*Wilson v. Dryvit Sys.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002) (internal quotation marks and citations omitted). This court has also noted that the economic-loss rule "prohibits recovery for purely economic loss in tort when a contract, *a warranty*, or the [Uniform Commercial Code] operates to allocate risk"

between the parties. *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (emphasis added) (citations omitted); *see also Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 785–86 (4th Cir. 2012) (discussing *Kelly* and affirming dismissal of negligence claim in warranty context).

It is undisputed that First Company provided the Warranty to Plaintiff's unspecified predecessor-in-interest in connection with the sale of its HVAC units. [DE-23 ¶¶ 8–9, 21–28; DE-23-1] And neither party has argued that Plaintiff is unable to enforce the Warranty, [*see* DE-34 at 15 (Plaintiff arguing that "First Co. had a contract with [Plaintiff] (the express warranty)")], which the court's independent research indicates would be enforceable by downstream purchasers of the HVAC units under North Carolina law. *See Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 496, 259 S.E.2d 552, 554 (1979) ("privity in the sale of goods is not necessary to a purchaser's action on an express warranty relating to the goods"); *Ellis*, 699 F.3d at 786 ("We also do not believe that the fact that Appellants are downstream purchasers makes a difference in the analysis."). The court accordingly conducts its economic-loss-rule analysis on the assumption that the Warranty is enforceable by Plaintiff. *See Kelly*, 671 F. Supp. 2d at 795–96 (defendant's "sale of a product with a limited warranty that covers the down-the-stream owner of the product . . . does not open [defendant] to a negligence claim for purely economic loss under North Carolina law once the product is sold to a third party").

The Warranty expressly sets forth both: (1) First Company's representations as to the quality of the HVAC units that it was allegedly negligent by manufacturing and supplying [DE-23-1 (warranting that the HVAC units and compressors would be "free from defects in material and workmanship" for stated periods of time)]; and (2) the scope of First Company's obligations to remedy defects in HVAC units that fall short of its representations [DE-23-1 (stating terms upon which it would remedy defects, but that the Warranty "does not include labor or other cost incurred for diagnosing, repairing, removing, installing, shipping, servicing or handling of either defective parts or replacement parts")]. Because Plaintiff makes no

9

allegation that the HVAC units (or their components[3]) caused any non-economic loss or damage to property other than the HVAC units themselves,[4] and First Company's representations and obligations with respect to the HVAC units themselves are set forth within the Warranty, the court concludes that Plaintiff's negligent-manufacturing/supplying and negligent-failure-to-repair theories are defeated the economic-loss rule.

       *iv. Fraudulent concealment by First Company*

First Company next attacks Plaintiff's cause of action alleging that First Company fraudulently concealed the issue with the Emerson/Copeland compressors installed into its HVAC units, arguing that First Company had no relationship with Plaintiff such that concealment of information from Plaintiff could be actionable as fraud. [DE-30 at 19–21]

As mentioned above, Rule 9(b) requires that a plaintiff plead fraud "with particularity[.]" Fed. R. Civ. P. 9(b). Plaintiff does not allege that First Company made any affirmative misrepresentations, but instead has pled a fraud-by-omission theory.

> In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity:
>
> (1) the relationship or situation giving rise to the duty to speak,
>
> (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred,
>
> (3) the general content of the information that was withheld and the reason

---

[3] "North Carolina courts have indicated that when a component part of a product or a system injures the rest of the product or the system, only economic loss has occurred." *Wilson*, 206 F. Supp. 2d at 753.

[4] Plaintiff's argument within its brief that First Company had a duty independent of the Warranty "to avoid harm to the[] residents" of its apartment complex [DE-34 at 19] is unavailing for the simple reason that no harm to any individual is alleged within Plaintiff's amended complaint, which instead seeks redress for Plaintiff's economic losses alone.

for its materiality,

(4) the identity of those under a duty who failed to make such disclosures,

(5) what those defendant(s) gained by withholding information,

(6) why plaintiff's reliance on the omission was both reasonable and detrimental, and

(7) the damages proximately flowing from such reliance.

*Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

Plaintiff's fraudulent-concealment claim against First Company must be dismissed for failure to adequately allege a "relationship or situation giving rise to the duty to speak[.]" *Id.* The Fourth Circuit has said that "North Carolina has never recognized a cause of action for fraudulent concealment in the absence of a relationship of trust or confidence created by a fiduciary, contractual or other similar relationship which imposes upon the defendant a 'duty to speak' to the plaintiff." *Burnette v. Nicolet, Inc.*, 818 F.2d 1098, 1101 (4th Cir. 1986) (citing *Vail v. Vail*, 233 N.C. 109, 63 S.E.2d 202 (1951)).

By alleging that First Company breached a duty to speak regarding the compressors [DE-23 ¶ 47], Plaintiff takes the position that a "relationship of trust or confidence created by a fiduciary, contractual or other similar relationship" exists between (1) a product manufacturer who is made aware of a potential defect with its product that is undiscoverable in the exercise of reasonable diligence and (2) any downstream purchaser of its product. But while Plaintiff cites to two North Carolina cases standing for the proposition that a seller of real property has a duty to the buyer with whom the seller is contracting to disclose known material defects on the property that are undiscoverable in the exercise of the buyer's reasonable diligence, [DE-34 at 14–15 (citing *Brooks v. Ervin Constr. Co.*, 253 N.C. 214, 116 S.E.2d 454 (1960) and *Everts v. Parkinson*, 147 N.C. App. 315, 555 S.E.2d 667 (2001)], these cases both concerned instances of direct contractual dealing. *Brooks* and *Everts* do not stand for the proposition that the seller owes any duty to

11

subsequent purchasers of the property, and the court's independent research has uncovered no cases standing for such a proposition.

Indeed, under Plaintiff's theory, a product manufacturer would have a "relationship of trust or confidence" with all potential downstream purchasers of its products, which in a free market would mean that First Company has such relationships with an unknown and unknowable class of purchasers, rendering the requirement of a "relationship of trust or confidence" entirely meaningless. Plaintiff's fraudulent-concealment theory therefore does not comport with *Burnette* and the North Carolina case law upon which it relies, and Plaintiff's cause of action alleging fraud against First Company must be dismissed.

### v. *Unfair and deceptive trade practices by First Company*

In its brief, Plaintiff clarifies that its "UDTPA claim is premised on First Co.'s fraudulent concealment [and] First Co.'s breach of warranty." [DE-34 at 16] Because the court concludes that Plaintiff's breach-of-warranty and fraudulent-concealment causes of action against First Company fail for the reasons described above, *see supra* Sections III(a)(i) and (iv), Plaintiff's UDTPA cause of action against First Company fails as well. *See SilverDeer, LLC v. Berton*, No. 11 CVS 3539, 2014 NCBC LEXIS 14, *36 (N.C. Super. Ct. May 7, 2014) (construing UDTPA claims as being "derivative of [plaintiffs'] other Claims, specifically Claim Three for fraud, and therefore rises and falls with those Claims"); *see also Ellis*, 699 F.3d at 787 (noting that under North Carolina law, "a breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain a UDTPA claim." (internal quotation marks and citation omitted)).

### b. Emerson/Copeland

### i. *Negligence by Emerson/Copeland*

Plaintiff raises three theories of how Emerson/Copeland were negligent. Plaintiff alleges that Emerson/Copeland were negligent by: (1) manufacturing and supplying the defective compressors; (2) failing to inform the public and Plaintiff of the defects in the compressors; and (3) failing to repair the

12

compressors once the defect in the compressors installed therein became apparent to First Company. [DE-23 ¶ 41]

As with its similar theory concerning First Company, Plaintiff's negligent-failure-to-inform theory concerning Emerson/Copeland is not viable under North Carolina law. *Herrera*, 2018 NCBC LEXIS 35 at *48. And as with its similar theories concerning First Company, Plaintiff's negligent-manufacturing/supplying and negligent-failure-to-repair theories concerning Emerson/Copeland are defeated by the economic-loss rule, but the analysis concerning Emerson/Copeland is somewhat more nuanced.

As described above, *see supra* Section III(a)(iii), Plaintiff is able to avail itself of the Warranty covering the First Company HVAC units, which expressly covers the "[c]ompressors" manufactured by Emerson/Copeland that First Company is alleged to have installed into the units. [DE-23-1; DE-23 ¶ 13] Indeed, Plaintiff concedes in multiple places in its briefing that it "has a contractual remedy against First Co." [DE-35 at 6; DE-34 at 15 (Plaintiff arguing that "First Co. had a contract with [Plaintiff] (the express warranty).")].

It is true, as Plaintiff points out [DE-35 at 5–8], that the Warranty contains First Company's representations regarding the HVAC units (and their components) alone, and contemplates potential obligations owed by First Company alone. The Warranty therefore does not obligate Emerson/Copeland to provide Plaintiff with any relief in the case that an Emerson/Copeland compressor proves to be defective, and there is no allegation or argument that Plaintiff has any other contractual avenue by which to seek relief from Emerson/Copeland specifically in such a case.

But while Plaintiff argues that this fact precludes the application of the economic-loss rule [DE-35 at 5–8], North Carolina courts have held that component manufacturers whose products are covered by warranties provided by others may also invoke the economic-loss rule, because the warrantee thereby has

13

a remedy for defects in the component, even if not from the component manufacturer specifically. *See Moore v. Coachmen Indus.*, 129 N.C. App. 389, 402, 499 S.E.2d 772, 780 (1998) (holding that the economic-loss rule prevented a plaintiff suffering economic loss only from suing a component manufacturer for negligence where the plaintiff was able to sue the manufacturer into whose product the component was installed under a limited warranty that covered the component); *see also Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 705, 671 S.E.2d 7, 14 (2009) (describing *Moore* as "holding that owners of a recreational vehicle were barred from recovering for pure economic loss from all defendants under the economic loss rule, including the component part manufacturer, who was not in privity with plaintiff, but where the Court concluded the remote supplier was covered under the subsidiary manufacturer's limited warranty").

Plaintiff invokes *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 643 S.E.2d 28 (2007), a case in which the North Carolina Court of Appeals declined to apply the economic-loss rule to bar negligence claims brought by a homeowner against the manufacturer of homebuilding materials with whom the homeowner was not in contractual privity. [DE-35 at 5–7] But the *Lord* court made clear that its holding "merely recognize[d] a means of redress for those purchasers who suffer economic loss or damage from improper construction but *who[] . . . have no basis for recovery in contract*[.]" 182 N.C. App. at 642, 643 S.E.2d at 32 (emphasis added) (quotation marks omitted). *Lord* is distinguishable on these facts because Plaintiff (1) is not a homeowner suing for improper construction of a home and (2) has a "basis for recovery in contract" in First Company's express warranty.

Following *Moore*, the court concludes that Plaintiff's negligent-manufacturing/supplying and negligent-failure-to-repair theories against Emerson/Copeland are defeated by the economic-loss rule.

14

### ii. *Fraudulent concealment by Emerson/Copeland*

Plaintiff's two fraudulent-concealment theories concerning Emerson/Copeland fail for the same reason its fraudulent-concealment theory against First Company failed: Emerson/Copeland had no duty to speak to Plaintiff that could render their silence fraudulent.

Plaintiff's first theory is that Emerson/Copeland owed it a duty to speak regarding the issues with the compressors by virtue of Emerson/Copeland's manufacture/sale and Plaintiff's purchase of the compressors. [DE-23 ¶ 46(a)] But as discussed above, North Carolina courts only recognize a duty to speak where a "relationship of trust or confidence" exists, *Burnette*, 818 F.2d at 1101, and Plaintiff's argument that such a relationship exists between a product manufacturer and a downstream purchaser of the product by virtue of the downstream purchase alone is not supported by North Carolina law. *See supra* Section III(a)(iv).

Plaintiff also alleges that Emerson/Copeland gained the duty to speak because they issued the August 2014 bulletin apprising certain of their customers (including First Company) of a potential issue with the compressors. [DE-23 ¶¶ 46(b)] North Carolina courts have said that "even though a [party] may have no duty to speak under the circumstances . . . if he does assume to speak he must make a full and fair disclosure as to the matters he discusses." *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 501 (1974). Plaintiff argues that Emerson/Copeland failed to make a "full and fair disclosure" within the meaning of *Ragsdale* because Emerson/Copeland (1) did not send the bulletin to Plaintiff or make it available the public and (2) made no follow-up disclosures. [DE-35 at 12]

These are implausible allegations of fraud on these facts. First, Plaintiff's alleged failure to send the bulletin to downstream purchasers like Plaintiff or make the bulletin public fails for the same reason Plaintiff's first theory failed: Emerson/Copeland had no duty to speak to Plaintiff or the public in the first instance. *See supra* Section III(a)(iv). Plaintiff directs the court's attention to no authority standing for the

15

proposition that a product manufacturer commits fraud when it discloses information to one of its customers but fails to disclose the same information to downstream purchasers of the product or the public writ large, and the court is aware of no such authority. And second, regarding Plaintiff's alleged failure to issue a follow-up bulletin, Plaintiff does not explain why the August 2014 bulletin's substance was not "full[,]" such as by alleging that Emerson/Copeland knew something material about the compressors that they withheld from the bulletin, such that a follow-up disclosure in the interest of "fair[ness]" was required. Plaintiff's follow-up theory accordingly fails to provide Rule 9(b)'s required description of "the general content of the information that was withheld and the reason for its materiality[.]" *Breeden*, 171 F.R.D. at 195.[5]

The court thus concludes that Plaintiff's cause of action alleging fraud against Emerson/Copeland must also be dismissed.

### iii. *Unfair and deceptive trade practices by Emerson/Copeland*

Plaintiff's cause of action alleging that Emerson/Copeland violated the UDTPA fails for the same reason its fraudulent-concealment claim against Emerson/Copeland fails. In its brief, Plaintiff makes clear that its UDTPA claim against Emerson/Copeland is based upon Plaintiff's allegations that Emerson/Copeland fraudulently concealed the purported defects in its compressors. [DE-35 at 14–15] Because the court concludes that Plaintiff's cause of action alleging fraud against Emerson/Copeland fails for the reasons described above, *see supra* Section III(b)(ii), Plaintiff's UDTPA cause of action against Emerson/Copeland must also be dismissed. *See SilverDeer*, 2014 NCBC LEXIS 14 at *36.

---

[5] To be sure, even had Plaintiff made such an allegation, it would not state a claim for fraudulent concealment, because Plaintiff admits that it did not receive the August 2014 bulletin, whose receipt would be necessary for an omission therefrom to be actionable as fraud. *See Breeden*, 171 F.R.D. at 195 (Rule 9(b) requires a plaintiff alleging fraud to allege "the relationship or situation giving rise to the duty to speak" and "the event or events triggering the duty to speak," as well as reasonable and detrimental reliance upon the concealed information).

16

## IV. Conclusion

For these reasons, Defendants' motions to dismiss are GRANTED. The court's ruling renders MOOT Defendants' joint motion to stay discovery pending adjudication of their motions to dismiss [DE-39].

SO ORDERED this the __20__ th day of __July__, 2020.

RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE